IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRENDA McGARVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| 3M COMPANY (f/k/a MINNESOTA ) | Removed from the Circuit Court of |
| MINING AND MANUFACTURING ) | Jackson County, Missouri, |
| COMPANY), AGC CHEMICALS ) | Case No. 2216-CV13853 |
| AMERICAS INC., AMEREX ) | |
| CORPORATION, ARCHROMA U.S. INC.,) | |
| ARKEMA, INC., BUCKEYE FIRE ) | |
| EQUIPMENT COMPANY, CARRIER ) | |
| GLOBAL CORPORATION, ) | |
| CHEMDESIGN PRODUCTS, INC., ) | |
| CHEMGUARD, INC., CHEMICALS, INC.,) | |
| CHEMOURS COMPANY FC, LLC, ) | |
| CHUBB FIRE, LTD, CLARIANT CORP., ) | |
| CORTEVA, INC., DEEPWATER ) | |
| CHEMICALS, INC., DU PONT DE ) | |
| NEMOURS INC. (f/k/a DOWDUPONT ) | |
| INC.), DYNAX CORPORATION, E.I. DU ) | |
| PONT DE NEMOURS AND COMPANY, ) | |
| KIDDE-FENWAL, INC., KIDDE P.L.C., ) | |
| NATION FORD CHEMICAL COMPANY, ) | |
| NATIONAL FOAM, INC., THE ) | |
| CHEMOURS COMPANY, TYCO FIRE ) | |
| PRODUCTS LP, as successor-in-interest to ) | |
| The Ansul Co; UNITED TECHNOLOGIES ) | |
| CORPORATION, UTC FIRE & ) | |
| SECURITY AMERICAS CORPORATION,) | |
| INC. (f/k/a GE INTERLOGIX, INC.), ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court of Jackson County, Missouri at Kansas City, to the United States District Court for the Western District of Missouri, Western Division. As grounds for removal, Tyco alleges as follows on

personal knowledge as to its own conduct and status, and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1. Plaintiff Brenda McGarvey, the widow of Glenn McGarvey, has brought this wrongful death action to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges was used for fire protection, training, and response activities.

2. Specifically, Plaintiff alleges that Defendants' AFFF products contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanesulfonic acid ("PFOS") and/or perfluorooctanoic acid ("PFOA") and/or their chemical precursors, and that Glenn McGarvey allegedly died of liver cancer as a result of his exposure to Defendants' AFFF products.

3. At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF"). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4. This action was filed on June 15, 2022, in the Circuit Court of Jackson County, Missouri at Kansas City, bearing 2216-CV13853. (Ex. A, Petition, hereinafter "Complaint" or "Compl."). Venue is proper in this Court pursuant to 28 U.S.C. §§ 105(b)(1) and 1441(a) because the Circuit Court of Jackson County, Missouri at Kansas City is located within the Western District of Missouri, Western Division.

5. Tyco Fire Products LP and Chemguard, Inc. were served with the Complaint on June 28, 2022. Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1).

6. Tyco is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under 28 U.S.C. § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7. Plaintiff generally alleges that Defendants, including Tyco, designed, manufactured, marketed, distributed, released, promoted, sold, and/or otherwise released into the stream of commerce AFFF that contained PFAS, including PFOS and/or PFOA and/or their chemical precursors. (Compl. ¶ 4). It is alleged that Mr. McGarvey regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during his working career as a civilian firefighter. (*Id.* ¶ 12). He allegedly died as a result of liver cancer due to his AFFF exposure. (*Id.* ¶¶ 9, 13).

8. Plaintiff seeks to recover compensatory and punitive damages allegedly caused by Mr. McGarvey's exposure to Defendants' AFFF products at various locations during the course of his training and firefighting activities. (*Id.* ¶¶ 10, 135).

9. Plaintiff asserts claims against all Defendants for wrongful death (*id.* ¶¶ 128–135).

3

10. Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Circuit Court of Jackson County, Missouri at Kansas City.

11. By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders and the current state court docket are attached to this Notice of Removal as Exhibit "A."

13. Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

14. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187, 196 (D.Mass.2008); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

15. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of

4

federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

16. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found, on multiple occasions, that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept.

5

27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings demonstrate that this case, too, is properly removed to federal court.[1]

A.  **MilSpec AFFF**

17.  Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields (including Air National Guard facilities), and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3] Since at least 2006, larger civilian airports (so-called "Part 139 airports"),[4] have been required to stock and use MilSpec AFFF. MilSpec AFFF is also sometimes used in other civilian settings.

18.  The manufacture of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.
[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.
[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.
[4] *See* FAA Part 139 Airport Certification Status List (last updated Nov. 12, 2021), available at https://www.faa.gov/airports/airport_safety/part139_cert/.
[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[7] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

19. From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. In 2019, the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

B. **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

    1. *The "Person" Requirement Is Satisfied*

20. The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute. For purposes of §

---

[6] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.
[7] *Id.*

1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

2. *The "Acting Under" Requirement Is Satisfied*

21. The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original).

22. The requirement of "acting under" federal office is met here because the effect of Plaintiff's claims, at least in part, is to challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to

8

achieve improvements in formulations."[8] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5; MDL Order 3, at 3–6 (same). If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

23. In designing, manufacturing, and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[9]

### 3. *The Nexus Requirement Is Satisfied*

24. The third requirement, that the defendant's actions taken under color of federal office have a causal nexus with plaintiff's claims or injuries or be otherwise related to the lawsuit, erects a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137.[10] To show the required nexus, it is

---

[8] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.
[9] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.
[10] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

9

sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *Sawyer*, 860 F.3d at 258.

25. Here, Plaintiff's claims arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications. Plaintiff alleges that the use of PFAS in AFFF is a source of its injuries. Tyco contends that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco, and other manufacturers to meet specifications established by the DoD. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Tyco's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

26. Here, Plaintiff's purported injuries arise at least in part from MilSpec AFFF. The causal connection or relationship between Plaintiff's alleged injuries and Tyco's actions under color of federal office is clear. It is irrelevant that the Complaint does not expressly contend that Plaintiff has been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also*

10

*Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4. *The "Colorable Federal Defense" Requirement Is Satisfied*

27. The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

28. At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense"). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[11] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's

---

[11] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

29. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

30. Tyco has satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

31. Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and

12

requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[12]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[13]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[14]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[15]  *See Ayo*, 2018 WL 4781145, at *12 ("That

---

[12] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).
[13] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.
[14] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.
[15] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020),

13

the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

32. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

33. Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort

---

https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

WHEREFORE, Tyco hereby removes this action from the Circuit Court of Jackson County, Missouri at Kansas City, to the United States District Court for the Western District of Missouri, Western Division.

Dated: July 28th, 2022

Respectfully submitted,

*/s/ Kara T. Stubbs*
Kara T. Stubbs            MO # 43414
Kehl D. Friesen            MO # 65909
BAKER STERCHI COWDEN & RICE LLC
2400 Pershing Road, Suite 500
Kansas City, MO 64108
Telephone:     (816) 471-2121
Facsimile:      (816) 472-0288
stubbs@bscr-law.com
kfriesen@bscr-law.com

**ATTORNEYS FOR DEFENDANTS**
**TYCO FIRE PRODUCTS LP and**
**CHEMGUARD, INC.**

## CERTIFICATE OF SERVICE

I certify that on July 28, 2022, I caused a true and correct copy of the foregoing Notice of Removal to be served via e-mail on the following:

Tim J. Riemann
RIEMANN INJURY LITIGATION LLC
1600 Genessee St., Ste. 860
Kansas City, MO 64102
tim@injurylit.com

Timothy R. West
THE WEST LAW FIRM, LLC
610 19th Street
Huntington Beach, CA 92648
tim@timwestlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

Daniel L. Ring
Tyler D. Alfermann
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
srashid@mayerbrown.com
rbulger@mayerbrown.com
dring@mayerbrown.com
talfermann@mayerbrown.com
**ATTORNEYS FOR DEFENDANT 3M COMPANY**

Peter Condron
Clifford J. Zatz
Laura Offenbacher Aradi
CROWELL & MORING
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com
**ATTORNEYS FOR DEFENDANT AGC CHEMICALS AMERICANS INC.**

Jennifer Simon
Alan Truitt
KAZMAREK MOWREY CLOUD LASETER LLP
1230 Peachtree Street N.E., Suite 900
Atlanta, GA  30309
jsimon@kmcllaw.com
atruitt@kmcllaw.com
**ATTORNEYS FOR DEFENDANT AMEREX CORPORATION**

Heidi Levine
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
hlevine@sidley.com
**ATTORNEY FOR DEFENDANT ARKEMA INC.**

Melanie Black Dubis
Charles Raynal
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 400
Raleigh, NC  27601
charlesraynal@parkerpoe.com
melaniedubis@parkerpoe.com
**ATTORNEYS FOR DEFENDANTS ARCHROMA MANAGEMENT LLC
and CLARIANT CORPORATION**

Michael L. Carpenter
GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.
P. O. Box 2636
Gastonia, NC  28053-2636
mcarpenter@gastonlegal.com
**ATTORNEY FOR DEFENDANT BUCKEYE FIRE EQUIPMENT COMPANY**

Jonathan I. Handler
Keith H. Bensten
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
kbensten@daypitney.com
jihandler@daypitney.com
**ATTORNEYS FOR DEFENDANTS KIDDE-FENWAL, INC., KIDDE, PLC, CARRIER GLOBAL CORPORATION, CHUBB FIRE, LTD., UNITED TECHNOLOGIES CORPORATION, and UTC FIRE & SECURITY AMERICAS CORPORATION, INC.**

Jonathan Blakley
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL 60606
jblakley@grsm.com
**ATTORNEY FOR DEFENDANT CHEMDESIGN PRODUCTS INC.**

John Parker
Oliver Twaddel
GOLDBERG SEGALLA LLP
711 Third Avenue, Suite 1900
New York, NY 10017
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com
**ATTORNEYS FOR DEFENDANT CHEMICALS INC.**

Kat Hacker
BARTLIT BECK LLP
1801 Wewatta, Suite 1200
Denver, CO 80202
dupont@bartlitbeck.com
**ATTORNEY FOR DEFENDANTS CORTEVA INC. and DuPONT DE NEMOURS INC.**

Kurt D. Weaver
WOMBLE BOND DICKSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
kurt.weaver@wbd-us.com
**ATTORNEY FOR DEFENDANT DEEPWATER CHEMICALS INC.**

Kirk G. Warner
Clifton L. Brinson
Addie K.S. Ries
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
P.O. Box 2611
Raleigh, NC 27602-2611
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com
**ATTORNEYS FOR DEFENDANT DYNAX CORPORATION**

David R. Erickson
Brent Dwerlkotte
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
derickson@shb.com
dbdwerlkotte@shb.com
**ATTORNEYS FOR DEFENDANTS E. I. DUPONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY and THE CHEMOURS COMPANY FC, LLC**

Ethan R. Ware
WILLIAMS MULLEN
1441 Main Street, Suite 1250
P.O. Box 8116
Columbia, SC 29202
eware@williamsmullen.com
**ATTORNEY FOR DEFENDANT NATION FORD CHEMICAL COMPANY**

Keith E. Smith
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
smithkei@gtlaw.com
**ATTORNEY FOR DEFENDANT NATIONAL FOAM INC.**


       */s/ Kara T. Stubbs*